**FEDERAL ELECTION COMMISSION,
Petitioner,**

v.

**James C. WRIGHT, Jr., Respondent.**

**Civ. A. No. 4–91–0542–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Nov. 12, 1991.

As Amended Nov. 13 and Nov. 26, 1991.

within her physical limitations. *See* Defendant's Memorandum in Support of Motion at

10.

Lawrence M. Noble, Richard B. Bader, V. Colleen Miller, Kenneth E. Kellner, Federal Election Com'n, Washington, D.C., for petitioner.

Robert Bredt Norwood, McKenzie and Baer, Dallas, Tex., Stanley M. Brand, David E. Frulla, Brand & Lowell, P.C., Washington, D.C., for respondent.

MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

The Federal Election Commission ("Commission") instituted this action seeking to obtain an order to compel former Speaker of the United States House of Representatives James C. Wright, Jr. ("Wright"), to answer questions submitted to him by the Commission pursuant to the authority of 2 U.S.C. § 437d(a)(1). Subject matter jurisdiction exists by virtue of 2 U.S.C. § 437d(b) and 28 U.S.C. § 1345.

The court has concluded that Wright should be ordered to answer the questions.

### Background

The Commission is the agency of the United States Government empowered with primary jurisdiction to enforce the Federal Election Campaign Act of 1971, as amended ("Act"), codified at 2 U.S.C. §§ 431–55.[1] 2 U.S.C. § 437c(b)(1) Congress vested in the Commission the authority to investigate alleged violations of the Act. 2 U.S.C. § 437g(a)(2). An investigatory tool given to the Commission is the power to order any person to submit, under oath, answers to questions propounded by the Commission. 2 U.S.C. § 437d(a)(1).

In July 1988 a complaint, as authorized by 2 U.S.C. § 437g(a)(1), was filed with the Commission by Citizens for Reagan, a Virginia corporation, against Wright alleging, *inter alia,* violation by Wright during the years 1985 and 1986 of 2 U.S.C. § 441i, which provides that no honorarium of more than $2,000.00 can be accepted by an officer of any branch of the federal government for any appearance, speech, or article. The complaint alleged that proceeds from sales of a book prepared by or for Wright, entitled *Reflections of a Public Man,* were used to avoid the honorarium limitations of § 441i(a).[2] On January 11, 1990, the Commission found reason to believe that Wright had violated § 441i and authorized the drafting of questions to be answered by Wright. Wright, who by then had resigned the speakership of and his seat in the House of Representatives, failed to answer the questions when they were submitted to him in March 1990 along with a letter from the Commission notifying him of its "reason to believe" finding. He responded that, the Speech or Debate Clause, U.S. Const. art. I, § 6, prevented the Commission from having the power to make the finding and caused the Commission not to have authority to investigate the complaint against him and that the activities of the Commission violated the self-disciplinary power given to the House by section 5 of article I of the U.S. Constitution.

Then, as contemplated by § 437d(a)(1), the Commission ordered to Wright to answer the questions. In February 1991 the Commission mailed the order to Wright along with the five questions he was to answer, each of which appears to be directed to the matter of purchase by groups, etc., before which Wright had given a speech or otherwise appeared, of copies of *Reflections of a Public Man.* Wright declined to answer the questions, reiterating as his reasons for not doing so the contentions he had expressed in response to the Commission's March 1990 letter.[3]

### The Instant Action

After Wright declined to comply with the Commission's order, the Commission authorized the office of its General Counsel to file, as contemplated by § 437d(b), a petition in this court to enforce the order. The petition asked the court to order Wright to

---

1. All references in this memorandum opinion and order to a section of the Act are to the text of the Act as it existed during the 1985–86 time period, when excessive honorariums were allegedly received by Wright, and thereafter until § 323 of the Act was amended effective January 1, 1991, by the Ethics Reform Act of 1989, Pub.L. No. 101–194 § 601(b)(1), 103 Stat. 1716, 1762 (1989). The amended version of § 441i is cited as "§ 441i/1–1–91."

2. The complaint was docketed by the Commission under the style "In the Matter of James C. Wright, Jr. Defendants" under Commission number "MUR 2649." The questions propounded by the Commission to Wright did not bear a style but were under number "MUR 2649."

3. Also, Wright's letter of declination contained assertions of innocence of the charges made against him.

appear and show cause why an order should not be made directing him to comply with the Commission's order. A show cause order was made. Wright answered it with a memorandum in opposition, making basically the same contentions he had urged before the Commission. Speaker Wright's Memorandum of Points and Authorities in Support of his Opposition to the Commission's Petition to Enforce and for Request to Dismiss the Underlying Commission Matter under Review 2649 ("Opposition") at 1–2. He has requested that the court dismiss in its entirety the proceeding pending before the Commission. *Id.* at 25.

Before the date set for the show cause hearing, Wright filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) because of the repeal of § 441i/1–1–91 by the Legislative Branch Appropriations Act, 1992, ("L.B.A.A. 1992"), Pub.L. No. 102–90, § 6(d), 105 Stat. 447, 451 (1991). The court has denied the motion to dismiss because the repealing act did nothing to eliminate the jurisdiction vested in the court pursuant to 2 U.S.C. § 437d(b) and 28 U.S.C. § 1345.

At the show cause hearing, Wright repeated his constitutional arguments and made the added argument that by the L.B.A.A. 1992 Congress had deprived the Commission of authority over § 441i violations. During the hearing, the question arose concerning the extent, if any, to which the court is entitled to take equitable factors into account in deciding whether to order enforcement of the Commission's order. At the request of the court, each party submitted a post-hearing memorandum on that subject.

### Limited Nature of Judicial Review of Administrative Discovery in an Enforcement Action

■ The Fifth Circuit has mandated that "[j]udicial review of an administrative subpoena in an enforcement action is limited and is to be handled summarily and with dispatch." *In re Office of Inspector General,* 933 F.2d 276, 277 (5th Cir.1991). This principle of limited review applies to agency discovery actions in general. *See, e.g., United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), which was an action by an agency to enforce its administrative order directing production of reports showing compliance with an earlier entered decree. In *Morton Salt Co.,* the Supreme Court said that an agency's investigation does not exceed the investigatory power as long as "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Id.* at 652, 70 S.Ct. at 368–69. With insubstantial variations, the *Morton Salt Co.* test has been uniformly applied and is the test to be utilized in the Fifth Circuit. *See Federal Election Comm'n v. Lance,* 617 F.2d 365, 368–69 (5th Cir.1980), *affirmed en banc,* 635 F.2d 1132 (5th Cir.), *cert. denied,* 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981).

■ The court should not concern itself with the merit of the alleged violation that is the subject matter of the agency's inquiry, but is limited to a determination of whether (a) the investigation is for a lawfully authorized purpose, (b) the documents (or other information) sought are relevant to the inquiry, and (c) the agency's demand is reasonable. *See Federal Trade Comm'n v. Texaco, Inc.,* 555 F.2d 862, 872 (D.C.Cir.), *cert. denied sub nom. Standard Oil Co. v. Federal Trade Comm'n,* 431 U.S. 974, 97 S.Ct. 2939, 2940, 53 L.Ed.2d 1072 (1977).

### The Grounds of Wright's Opposition are Without Merit

■ Wright does not question the relevancy of the information sought by the Commission's questions to the subject matter of its investigation, nor does he seriously contend that the questions are too broad, burdensome or indefinite.[4] The court con-

---

4. Only in passing in his post-hearing supplemental memorandum does Wright even mention over-breadth and burdensomeness. Speaker

Wright's Supplemental Memorandum Confirming this Court's Inherent, Equitable Power to Dismiss this Subpoena Enforcement Proceeding

cludes that the Commission's investigation is for a lawfully authorized purpose, that the information sought by the questions is relevant to the investigation, and that the Commission's demand is reasonable.

The Speech or Debate Clause provides: [F]or any Speech or Debate in either House, they [Senators or Representatives] shall not be questioned in any other Place.

U.S. Const., art. I, § 6. Wright predicates his Speech or Debate Clause argument on facts pertaining to an investigation that was conducted by the House Committee on Standards of Official Conduct ("Committee on Standards") into activities of Wright, including activities of the kind that are described in the complaint filed by Citizens for Reagan. Opposition at 3–6. An ingredient of his argument is that the proceedings of the Commission are fatally tainted by the fact, he alleges, that the Commission's "reason to believe" finding of January 11, 1990, was based on information contained in a report that was prepared by Special Outside Counsel Richard J. Phelan at the request of the Committee on Standards, a copy of which is an attachment to the Opposition. *Id.* at 12–17. Wright refers to the report as "speech or debate material" that has "permeated and tainted MUR 2649." *Id.* at 15.

 The court has concluded that Wright's opposition based on the Speech or Debate Clause is without merit. In *United States v. Brewster,* the Supreme Court explained:

In sum, the Speech or Debate Clause prohibits inquiry only into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts.

. . . .

Careful examination of the decided cases reveals that the Court has regarded the [Speech or Debate Clause] protection as reaching only those things "generally done in a session of the House by one of its members in relation to the business

and the Commission's Underlying Investigation

before it," *Kilbourn v. Thompson,* [103 U.S. 168, 204 [26 L.Ed. 377] (1880) ], or things "said or done by him, as a representative, in the exercise of the functions of that office," *Coffin v. Coffin,* 4 Mass. 1, 27 (1808).

. . . .

It is beyond doubt that the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts. So expressed, the privilege is broad enough to insure the historic independence of the Legislative Branch, essential to our separation of powers, but narrow enough to guard against the excesses of those who would corrupt the process by corrupting its Members.

408 U.S. 501, 512–13, 525, 92 S.Ct. 2531, 2537–38, 2544, 33 L.Ed.2d 507 (1972). The questions propounded to Wright quite clearly are directed to development of information concerning activities occurring outside, and away from, the House, and which are totally unrelated to anything done in the course of the legislative process or any motivation for any such thing. Even if, as the court assumes, *arguendo,* to be the case, the Commission took into account in deciding to pursue action against Wright findings reported in the Phelan report, there still would be no basis for a conclusion that the Speech or Debate Clause has been implicated in a way detrimental to the Commission's activities. The report is not, and does not report on, "Speech or Debate" of Wright. It merely reports findings related to financial activities and affairs of Wright. While the Speech or Debate Clause privilege has been extended beyond literal speech or debate in one of the Houses, the extension has been "only when necessary to prevent indirect impairment of such deliberations." *United States v. Doe,* 455 F.2d 753, 760 (1st Cir.), *vacated by Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). In *Gravel v. United States,* the court explained:

at 8.

The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

408 U.S. 606, 625, 92 S.Ct. 2614, 2627 (1972) (citing *United States v. Doe* with approval). Reliance by the Commission on findings contained in the report would not impair in any respect deliberations of the House. The relevant findings that were reported (alleged use of Wright's publication as a means of generating excessive honorariums) are independent of anything that occurred in any kind of House proceeding. Use of those findings against Wright does not threaten the integrity of the deliberative or communicative processes of the House.

■ Wright concedes that his publication may not implicate the Speech or Debate clause, but he argues that once having been questioned about those matters by the Committee on Standards he became immunized from being required to give testimony on the same subject in any other context:

> Although Speaker Wright's private publication may not implicate the Clause, the Committee's deliberations concerning that subject *do* implicate the Clause. Accordingly, the government, through the Commission, can no more "question" Speaker Wright about what he told the Committee than a prosecutor may question a witness who has testified under a grant of immunity.

Opposition at 22–23 (emphasis Wright's). This argument overlooks that any testimony given by Wright to the Committee on Standards was given by him in his capacity as a witness and not in his legislative capacity with the consequence that no immunity attached by virtue of the Clause. The report itself undoubtedly should be viewed to be a legislative act, and there is no doubt that legislative acts went into the preparation of the report. However, none of those legislative acts were of Wright. He is no more protected from the use of the report than is any other citizen.

■ Woven into Wright's Speech or Debate Clause opposition is an argument that the self-discipline clause, when combined with the Speech or Debate Clause, operates, under the facts of this case, to prevent inquiry by the Commission into Wright's alleged violations of § 441i. The argument of Wright on this subject is as follows:

> When read in *pari materia* with the rules and self-discipline clause, which provides that "[e]ach House may determine the Rules of its Proceedings, may punish its Members for disorderly Behavior, and, with the Concurrence of two-thirds, expel a Member," U.S. Const., art. I, § 5, cl. 2, the Speech or Debate Clause effects a jurisdictional allocation to the House over enforcement of rules and standards of conduct applicable to members.

Opposition at 7. Wright's argument is tantamount to a contention that the relevant provisions of the Act are unconstitutional. The court has found no authority to support this argument, and rejects it. Furthermore, the argument fails to recognize that the standards of conduct and rules of enforcement found in the Act are, indeed, self-disciplinary rules—the combined votes of the two Houses created the statutory provisions in question.

The court is of the opinion that none of the reasons given by Wright in his Opposition support any of the relief he seeks.

### The Repeal of Section 441i Did Not Deprive the Commission of the Power to Proceed

■ By the Ethics Reform Act of 1989 ("E.R.A. 1989"), with an effective date of January 1, 1991, Congress (a) amended § 441i by removing the Members of the House from its scope, (b) prohibited receipt by the Members of the House of any honorarium, (c) provided that the prohibition would be subject to the rules and regula-

tions of and administered by a designated Committee of the House, (d) granted authority to the Attorney General to enforce the prohibition, and (e) amended House Rule XLVII to prohibit receipt by a Member of the House of any honorarium. Pub.L. No. 101–194, §§ 601(b) & (a), 603 & 804(a), 103 Stat. 1716, 1760–62, 1763, 1776 (1989). Thereafter, effective August 14, 1991, Congress, by the L.B.A.A.1992, repealed § 441i/1–1–91. L.B.A.A. 1992 §§ 6(d) & (f)(1), 105 Stat. at 451. Wright asserts that because of these legislative changes the Commission has no authority to investigate and prosecute violations of § 441i. The court disagrees.

Congress enacted 1 U.S.C. § 109 (the "General Savings Statute") to guard against accidental or incidental releases from liability resulting from new legislation:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.

E.R.A. 1989's amendment of § 441i to cause it not to apply to the Members of the House did not expressly "release or extinguish any penalty, forfeiture, or liability incurred under" § 441i. 1 U.S.C. § 109. The repeal of § 441i/1–1–91 by the L.B.A.A. 1992 is not relevant to this action because § 441i already had been repealed as it affected the Members of the House.[5] Because of the provisions of 1 U.S.C. § 109, § 441i is to "be treated as remaining in force for the purpose of sustaining any

proper action or prosecution for the enforcement of [any] penalty, forfeiture or liability" incurred under such statute.

While the E.R.A. 1989 contemplates that the House will administer, and authorizes the Attorney General to civilly prosecute violations of, the newly enacted complete prohibition on honoraria by the Members of the House after January 1, 1991, neither the E.R.A. 1989 nor the L.B.A.A. 1992 contains language to suggest that Congress intended to divest the Commission of authority given to it by the Act to enforce the penalties and liabilities that are statutorily provided for violation of § 441i, nor has any other agency or department been given authority to do so. Nevertheless, Wright argues that the E.R.A. 1989 and the L.B.A.A.1992 had the effect of divesting the Commission of all jurisdiction over § 441i violations. If Wright's argument were to be accepted, the ensuing conclusion would be that, by virtue of 1 U.S.C. § 109, Wright would continue to be subject to whatever penalties and liabilities might flow from violations of § 441i, but there would not be any person or agency with authority to prosecute for the enforcement of those penalties and liabilities.[6] The court is unwilling to attribute to Congress the intent to accomplish such an absurd result. As the Supreme Court noted in *De La Rama S.S. Co. v. United States,*

> By the General Savings Statute Congress did not merely save from extinction a liability incurred under the repealed statute; *it saved the statute itself* . . .

344 U.S. 386, 389, 73 S.Ct. 381, 383, 97 L.Ed. 422 (1953) (emphasis added). Thus, to this day, § 441i is deemed to be in full force and effect as to any conduct of Wright occurring before the date of its

---

**5.** The amendment of § 441i is to be treated as a repeal of the statute within the meaning of 1 U.S.C. § 109 insofar as it affected the Members of the House. *See Moorehead v. Hunter,* 198 F.2d 52, 53 (10th Cir.1952).

**6.** Wright contends that the repealing statutes caused a reallocation of jurisdiction that vested in the House exclusive authority to investigate and enforce honorarium limits violations (Speaker Wright's Reply Memorandum Support-

ing his Motion to Dismiss this Case Under Fed. R.Civ.P. 12(b)(1) for Lack of Subject Matter Jurisdiction at 2, 4–5, 9); but, he appears to be careful not to contend that anything done by Congress in the repealers caused the House to have the authority *to enforce the penalties and liabilities that are applicable to § 441i violations* as opposed to the authority to enforce honorarium prohibitions contained in the Rules of the House. *See id.* at 9.

repeal. By reason of the provisions of 2 U.S.C. § 437c, 437d, 437g, none of which has been repealed, the Commission continues to have the same authority to enforce § 441i (as it is deemed to be in effect) as it had before the section was repealed. The legislative purpose would be defeated rather than furthered if the provisions for enforcing § 441i were found to be inoperative. *See De La Rama S.S. Co.,* 344 U.S. at 390–91, 73 S.Ct. at 383–84.

If Congress had intended by the repealers to extinguish penalties and liabilities of House Members for pre-repeal conduct violative of § 441i, it undoubtedly would have done as § 109 contemplated—"so expressly [provide]." 1 U.S.C. § 109. And, if Congress had intended to eliminate the Commission's authority to enforce penalties and liabilities resulting from pre-repeal violations of § 441i or to transfer authority for enforcement of those violations from the Commission to another agency, it knew how to express its intent. *See, e.g., Hallowell v. Commons,* 239 U.S. 506, 508–09, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916); *Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 867 F.2d 1518, 1521 (5th Cir.1989).

The court concludes that the Commission continues to have the authority to investigate and prosecute alleged violations by Wright of § 441i.

### *The Court Cannot Base a Decision on the Equitable Factors that Appear to Exist in this Case*

As the comments made by the court during the July 30, 1991, hearing indicate, the court shares to a degree Wright's concerns about the activities of the Commission. The matters about which the Commission is inquiring apparently have been fully investigated and reported by Special Counsel Phelan, they have been the subject of nationwide publicity and debate, and they undoubtedly played an important role in the decision of Wright to resign his speakership of and membership in the House. There appears to be nothing of significant worth to be gained by ongoing pursuit of those matters through the Commission. One might reasonably conclude that, if

there was a violation of the Act, Wright has been penalized enough and that any further prosecution either is politically motivated or is bureaucratic make-work. These concerns, and the indication in the opinion in *Chapman v. Maren Elwood College,* 225 F.2d 230, 232 (9th Cir.1955), that equitable consideration can prevail in an agency discovery enforcement proceeding, prompted the court to invite the parties to submit supplemental briefs on the subject of the extent, if any, to which equitable factors can be taken into account by the court in reaching a decision in this action.

■ After having reviewed the excellently drawn supplemental memoranda submitted in response to the court's invitation, the court has concluded that the equitable factors that were mentioned at the hearing, as well as those suggested by Wright in his supplemental memorandum, cannot enter into the court's decision. The authorities mentioned at an earlier point in this memorandum opinion and order on the subject of the limited nature of judicial review compel the conclusion that the scope of judicial review of an administrative discovery request is so restricted that the court would exceed its authority if it were to base a decision on the equitable considerations that exist in this case. The reasonableness inquiry the court is to make is to be directed to the breadth of the discovery demand rather than to the issue of whether, in a general sense, the making of the discovery request is consistent with wisdom and good judgment.

### ORDER

For the reasons given in the foregoing memorandum opinion, the court ORDERS that:

(1) On or before January 10, 1992, Wright shall comply with the Commission's order by delivering to the Commission his written answers, made under his oath, to the questions propounded to him by the Commission in the proceeding before the Commission designated as MUR 2649, as contemplated by the Commission's February 19, 1991, Order to Submit Written Answers;

(2) All relief sought by Wright in his Opposition be, and is hereby, denied; and

(3) The Commission recover from Wright costs of court incurred by it in this action.