UNITED STATES of America, Plaintiff,

v.

Charles G. ROSE III, Defendant.

Civ. A. No. 89–1469 (TPJ).

United States District Court,
District of Columbia.

April 21, 1992.

Surell Brady, Margaret S. Hewing, Margot de Ferranti, Civ. Div., Dept. of Justice, Washington, D.C., for plaintiff.

Steven R. Ross, Gen. Counsel to Clerk U.S. House of Representatives, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This is a statutory proceeding under the Ethics in Government Act of 1978 ("EIGA" or "the Act"), 2 U.S.C. §§ 701 *et seq.* (1985), initiated by the U.S. Department of Justice pursuant to 2 U.S.C. § 706, against a Member of Congress to assess civil penalties for the defendant's alleged knowing and willful failure to file truthful financial disclosure statements with the Clerk of the U.S. House of Representatives in compliance with Sections 701(a) and 702(a) of the Act.[1]

The defendant, Charles G. Rose III, U.S. Representative from the Seventh District of North Carolina, has moved pre-emptively to dismiss the complaint on, *inter alia,* the ground of an asserted constitutional immunity, and has obtained a stay of discovery pending disposition of his motion. His motion is supported by the Speaker of the House of Representatives and a "bipartisan leadership group," comprised of the Majority and Minority Leaders and Whips (hereinafter "the House leadership"), appearing as *amicus curiae.*

The Court has concluded that the only issue appropriately before it for decision at this stage of the case is whether the action may be maintained at all consistently with the separation of powers principle as it finds expression in certain provisions of the U.S. Constitution, and, in particular, with the Speech or Debate Clause, U.S. Const., art. I, § 6, cl. 1. Having determined to

1. Pub.L. No. 101–194, Title II, § 202, 103 Stat. 1724 of Nov. 30, 1989, amended and transferred Sections 701–709 of Title 2 to Appendix 6 of Title 5 U.S.C., as Sections 101–109, effective January 1, 1991. They are referred to herein throughout by their original designations to conform to the citations in the briefs of the parties.

deny the motion to dismiss the complaint on the constitutional ground, the Court observes that its decision is subject to immediate appeal. *See Helstoski v. Meanor,* 442 U.S. 500, 506–08, 99 S.Ct. 2445, 2448–49, 61 L.Ed.2d 30 (1979); *Dombrowski v. Eastland,* 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967); *Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). Anticipating such an appeal, the Court therefore reserves judgment on the non-constitutional grounds asserted for dismissal, none of which will be reached if Rep. Rose is correct as to his constitutional immunity from suit.

## I.

The complaint, filed in May, 1989, alleges that Rep. Rose received multiple personal loans in principal amounts exceeding $10,-000, and aggregating at least $138,000, between the years 1979 and 1985 from various commercial lenders and his own campaign committee, none of which he disclosed, as required by 2 U.S.C. § 702(a), on his annual financial disclosure statements filed with the Clerk of the House. It also alleges that Rep. Rose failed to report as a "gift" the interest forgone on loans from his campaign committee or the use of a certificate of deposit belonging to his campaign committee he pledged as collateral for another personal loan.

It appears, however, that in October, 1986, the Committee on Standards of Official Conduct of the House of Representatives (hereinafter the "Ethics Committee") had received a complaint of some of the same alleged reporting derelictions on the part of Rep. Rose. The Ethics Committee then commenced its own investigation, and concluded its proceedings thereon on March 23, 1988, with a report, *In the Matter of Representative Charles Rose III:* H.R.Rep. No. 526, 100th Cong., 2d Sess. (1988) (hereinafter the "Rose Report"). The Rose Report found Rep. Rose to have violated two of the Rules of the House of Representatives, Rules XLIII, cl. 6, and XLIV, cl. 2,[2] and recommended that the Ethics Committee issue him a "formal and public reproval" for his transgressions. The letter of reproof duly issued, but there the matter came to rest insofar as the House of Representatives and its Ethics Committee was concerned. No further penance was exacted of Rep. Rose, and no direction was given him by the Rose Report or the letter of reproof to correct the deficient financial disclosure forms by formal amendment.

The disposition made by the Ethics Committee of the charges against Rep. Rose precipitated an exchange of correspondence between the Committee and the Department of Justice as to its sufficiency as punishment and redress. This complaint followed shortly thereafter.

The Department of Justice asks for an assessment of a civil penalty against Rep. Rose in the maximum amount of $5000 on each of the six counts of the complaint (each count representing a reporting year), and an injunction against his violation of the financial reporting requirements of EIGA in the future.

It is the position of the defendant Rep. Rose, argued chiefly on his behalf by the House leadership as being a matter of profound constitutional importance, that in those instances in which the House itself undertakes to discipline a Member for ethical transgressions—at least those not amounting to criminal misconduct—the Executive Branch is without power to add to the sanction imposed, if any. The House must be deemed to have primary (and, if it has been exercised, exclusive) jurisdiction over its Members as to their ethical comportment, a circumstance commanded by the principle of the separation of powers in the interest of interbranch "comity," as expressed in the Constitution itself in art. I, §§ 5 and 6, and recognized and confirmed by EIGA in 2 U.S.C. § 705(a).[3]

---

**2.** House Rule XLIII, cl. 6, prohibits the use of campaign funds for personal purposes. Rule XLIV, cl. 2, adopts the financial reporting requirements of EIGA as a "rule" of the House of Representatives.

**3.** Article I, sec. 5 of the Constitution empowers each House of Congress to "determine the Rules of its Proceeding [and] punish its Members for disorderly Behavior...." Section 6 (the "Speech or Debate clause") declares that, "[F]or

## II.

The Supreme Court has on several occasions in recent times sought to define the limits of the immunity conferred upon Members of Congress by the Speech or Debate Clause in actions commenced by the Department of Justice. In *United States v. Johnson*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), the Supreme Court *affirmed* the dismissal (on appeal) of a criminal charge against a Congressman of conspiring to make a speech on the House floor for a payment from private sources. After tracing the origins of the Speech or Debate Clause through England's history of royal prosecutions of fractious members of Parliament, the Supreme Court observed that the inclusion of the Clause in the U.S. Constitution was "to prevent intimidation [of Members of Congress] by the executive and accountability before a possibly hostile judiciary." *Id.* at 181, 86 S.Ct. at 755. But, although the Clause is to be "read broadly to effectuate its purposes," the Supreme Court said, 383 U.S. at 180, 86 S.Ct. at 755, it nevertheless does not preclude a prosecution which "does not draw in question the legislative acts of the defendant member of Congress or his motives for performing them."

Then in *United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), the Supreme Court *reversed* dismissal of an indictment charging a United States Senator with accepting private money in return for unspecified services possibly related to pending legislation, reiterating that the Speech or Debate Clause confers immunity only for "legislative acts," i.e., those acts "clearly a part of the legislative process—the *due* functioning of the process." 408 U.S. at 516, 92 S.Ct. at 2539

(emphasis in original). By that phrase (taken from *Johnson*, 383 U.S. at 172, 86 S.Ct. at 751), the Supreme Court said, was meant "only acts generally done in the course of the process of enacting legislation." *Brewster*, 408 U.S. at 514, 92 S.Ct. at 2538.[4]

Other cases, involving the extent of Speech or Debate Clause immunity in legal proceedings instigated by the Executive Branch other than criminal prosecutions, have similarly employed the analysis ordained by *Johnson* and *Brewster* to ascertain whether the conduct in question represented a "legislative act." In *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), for example, in passing upon a motion to quash a grand jury subpoena, the Supreme Court found a Senator's reading of classified government documents before a Senate subcommittee meeting to be within the privilege; the Senator's arrangements for the private publication of the documents were not.

> Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

408 U.S. at 625, 92 S.Ct. at 2627. A review of earlier cases, the *Gravel* court said, suggested "a decidedly jaundiced view towards extending the Clause so as to privilege illegal or unconstitutional conduct beyond

---

any Speech or Debate [Senators or Representatives] shall not be questioned in any other Place."

Title 2 U.S.C. § 705(a) directs the House and Senate Ethics Committees to "establish procedures for the review "[of financial disclosure statements] to determine whether they are "timely ... complete, and are in proper form" and to "direct [the reporting individual] to take all necessary corrective action."

**4.** The several *Brewster* opinions, majority and dissents, also speak directly and at length to the

apprehension that presumably animates the House leadership's interest in Rep. Rose's plight here: the potential for mischief inherent in empowering the Executive Branch to commence *any* legal proceedings against disfavored legislators for ulterior or political reasons.

The Court stresses that neither Rep. Rose nor *amici* allege an improper motive on the part of the Department of Justice in bringing this action, and there is certainly no evidence to that effect in the present record.

that essential to foreclose executive control of legislative speech or debate and associated matters such as voting and committee reports and proceedings." *Id.* at 620, 92 S.Ct. at 2625.

### III.

 "Legislative acts," then, it appears, even those corruptly done, are endowed with Speech or Debate Clause immunity; otherwise Members of Congress remain as amenable to the processes of the law as anyone else, unless, of course, Congress has by statute exempted them.[5]

 The leading case in this jurisdiction to address the separation of powers, the Speech or Debate Clause, and the definition of a "legislative act" as they relate to the question of the vulnerability of a Member of Congress to judicial sanctions for EIGA violations is *United States v. Hansen,* 566 F.Supp. 162 (D.D.C.), *aff'd* No. 83–1689 (D.C.Cir. Aug. 1, 1983) (unpublished order), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984) (hereinafter *"Hansen I"*).[6]

Rep. Hansen was indicted criminally under the general false statements statute, 18 U.S.C. § 1001, for knowingly and willfully filing a false EIGA financial disclosure statement. Rep. Hansen argued pre-emptively, as Rep. Rose and the House leadership do here, that the Speech or Debate Clause operated to immunize him as a Member of Congress against prosecution.[7] The district court was unpersuaded by Rep. Hansen's contention that Congress' own constitutionally conferred power to discipline its membership, and its enactment of the legislation requiring the filing of financial disclosure reports, rendered the very act of filing such reports a "legislative act" and, as such, within the protection afforded the Speech or Debate Clause. Quoting from *Brewster,* 408 U.S. at 526, 92 S.Ct. at 2544, the *Hansen I* court observed that " '[t]he question is whether it is necessary to inquire into how [defendant] spoke, who he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation of this statute.' " *Hansen I* at 170. The district court said:

> This prosecution does not make it necessary to inquire into any of these areas because it only refers to defendant's statements on his financial disclosure report, statements which this Court holds are simply outside the deliberative and communicative functions of the House.

*Id.* at 170 [citing also *United States v. Myers,* 692 F.2d 823 (2d Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2437, 77 L.Ed.2d 1322 (1983) ].

*Hansen I* was affirmed, albeit in an unpublished order, by the D.C. Circuit, and the Supreme Court declined to review on *certiorari,* leading this Court to conclude that the district court's decision was neither patently inconsistent with Circuit or Supreme Court precedent, nor contrary to Constitutional doctrine. Thus it would be prudent to follow *Hansen I* here, at least with respect to the Speech or Debate Clause issues the cases have in common, and the Court will do so.

---

**5.** Not only did Congress fail to exempt its Representatives and Senators from EIGA, it pointedly made them subject to it, imposing upon Members, as well as others in government, detailed financial disclosure requirements. 2 U.S.C. §§ 701, 702(a). It then conferred upon the Attorney General, chief legal officer of the Executive Branch, the right and power to go to court to seek penalties against those officials who file flagrantly deceitful disclosure statements, Members of Congress not excepted. 2 U.S.C. § 706. Neither the Act nor any provision of the Constitution purports to reserve a jurisdictional primacy or exclusivity for Congressional disciplinary committees taking up complaints of Members' reporting delinquencies as matters of self-governance.

**6.** Rep. Hansen was eventually tried and convicted, and his conviction affirmed. *United States v. Hansen,* 772 F.2d 940 (D.C.Cir.1985) (*Hansen II*). Rep. Hansen, too, was supported before the courts by his Congressional colleagues as *amici. Id.* at 943, n. 1.

**7.** Rep. Hansen also unsuccessfully argued that Congress' inclusion of 2 U.S.C. § 706 in EIGA, calling only for the imposition of civil penalties, in proceedings initiated by the Attorney General, had, by implication, repealed the general criminal false-statement statute as it applied to defective EIGA financial disclosure statements.

For the foregoing reasons, therefore, it is, this 21st day of April, 1992,

ORDERED, that the defendant's motion to dismiss the complaint on the constitutional ground asserted is denied; and it is

FURTHER ORDERED, that all discovery, and all other proceedings herein, remain stayed pending the completion of proceedings on any timely appeal taken herefrom.