Candis O. RAY, trading as Candis O. Ray & Associates, Appellant,

v.

Senator William PROXMIRE et al.

No. 77–1522.

United States Court of Appeals, District of Columbia Circuit.

Argued March 23, 1978.

Decided July 31, 1978.

Certiorari Denied Oct. 30, 1978.
See 99 S.Ct. 326.

24. See notes 5–6 *supra.*

Appeal from the United States District Court for the District of Columbia.

(D.C. Civil Action No. 77–0259).

Bruce W. Haupt, Washington, D. C., for appellant.

Timothy A. Vanderver, Jr., Washington, D. C., with whom Donald A. Lofty, Washington, D. C., was on brief, for appellees.

Before WRIGHT, Chief Judge, and TAMM and ROBINSON, Circuit Judges.

PER CURIAM:

Appellant operates a tour and hospitality service catering to conventions and sightseeing groups in the District of Columbia. Appellee Ellen H. Proxmire is a central figure in a competing enterprise, Washington Whirl-Around, Inc., which in recent

years has captured much of appellant's business. Ms. Proxmire's husband, the only other appellee, is the senior United States Senator from Wisconsin. Appellant brought suit in the District Court, contending that appellees had tortiously injured her through activities related to Whirl-Around. After a hearing, the suit was dismissed, with prejudice, on the ground that appellant's complaint failed to state a claim upon which relief could be granted.[1] Having closely studied the complaint, we find that, even given its broadest reading, it does not denote any legally actionable conduct. Consequently, we affirm.

## I

■ One claim, implicating Senator Proxmire alone, must be dealt with in the context of the privilege constitutionally conferred upon Members of Congress. The complaint theorizes that the Senator libeled appellant and disparaged her business in a letter to Senator Cannon, Chairman of the Senate Select Committee on Standards and Conduct. The letter was in reply to an inquiry by Senator Cannon with regard to appellant's charge that Senator Proxmire had arranged for Whirl-Around to make use of Senate rooms on its tours. The allegedly defamatory statement was that appellant's business rivals "are obviously

more competitive and more efficient than she is."[2]

■ Assuming, as we must in the context of a motion to dismiss, that appellant could prove all she avers,[3] this facet of her suit cannot survive the Speech or Debate Clause.[4] In responding to a Senate inquiry into an exercise of his official powers, Senator Proxmire was engaged in a matter central to the jurisdiction of the Senate,[5] and "[t]he claim of unworthy purpose does not destroy the privilege."[6] There is no indication that he disseminated his letter to anyone whose knowledge of its contents was not justified by legitimate legislative needs. Nor is there any suggestion that the statement objected to intimated anything not reasonably spurred by the subject of Senator Cannon's inquiry.[7]

## II

There are two other assertions against Senator Proxmire. One, previously mentioned, is that he arranged for use of Senate rooms by Whirl-Around's clientele; the other is that he voted favorably to positions supported by its existing or potential customers in order to further Whirl-Around's interests.[8] These allegations might raise a difficult question with respect to immunity under the Speech or Debate Clause,[9] but one we need not reach since we conclude

---

1. See Fed.R.Civ.P. 12(b)(6).

2. Appendix to Brief for Appellant (App.) (fourth unnumbered page).

3. *E. g., Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957).

4. U.S.Const. art. I, § 6, cl. 1. In so concluding, we do not intimate a view as to whether the statement in question could be deemed actionable under general principles of the law of defamation.

5. See *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583, 602–603 (1972).

6. *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019, 1027 (1951).

7. Compare *Gravel v. United States, supra* note 5, 408 U.S. at 625–626, 92 S.Ct. at 2627–2628,

33 L.Ed.2d at 602–603 and *McSurely v. McClellan*, 180 U.S.App.D.C. 101, 109, 553 F.2d 1277, 1285 (1976), *cert. dismissed*, —— U.S. ——, 98 S.Ct. 3116, 57 L.Ed.2d 704 (1978); see *Doe v. McMillan*, 185 U.S.App.D.C. 48, 566 F.2d 713 (1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 59 (1978), *after remand from* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *Hutchinson v. Proxmire*, 579 F.2d 1027 (7th Cir. 1978).

8. Closely related is an averment, which the Senator disputes, of a conflict of interest prohibiting him from voting on legislation that would benefit Whirl-Around's clients. See also Transcript of District Court Hearing (Tr.) 5. Since that claim involves similar legislative behavior, and since the same factors counsel against the implication of a private cause of action, this theory is identically ill-fated.

9. Compare *Powell v. McCormack*, 395 U.S. 486, 502, 89 S.Ct. 1944, 1954, 23 L.Ed.2d 491, 505–506 (1969) with *United States v. Brewster,*

that in no event could either provide the basis for suit by appellant.

■ As to the first, appellant alludes to a Senate rule supposedly prohibiting such uses of the rooms[10] and to the proposition that governmental facilities should not be used for private gain at public expense. For the second, appellant invokes the criminal statute forbidding senators from accepting favors in return for influence on their official performances.[11] Neither of these considerations provides appellant with a private cause of action nor serves to define the Senator's duty of care in a common-law-tort cause of action.

The Supreme Court has enunciated the criteria determining whether a statute affords an individual right of action:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," . . .—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it

would be inappropriate to infer a cause of action based solely on federal law?[12]

Viewed in this framework, it is evident that the criminal statute in question safeguards the interests of the Nation, which might have a cause of action,[13] but not those of appellant in her business pursuits.[14] Nor does the legislative history of the statute suggest a purpose to create a private right of action.[15] As the Court has held with respect to a quite similar statute, this legislation "is a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone."[16] We agree with the District Court that appellant has no privately-enforceable right under this penal provision.

■ And assuming without deciding that an internal rule of the Senate could ever give rise to a private cause of action, we are satisfied that none is conferred by that adverted to here. Obviously the purpose of such a rule is at minimum to administer Senate facilities, and at most, to regulate one aspect of its members' conduct. In each respect, interpretation and application of the rule is a matter not for the courts, but for the Senate; and if the rule was designed to impose a higher standard than the law of torts exacts, it is for the Senate, not us, to so declare. What we can say is that if the rule denies visitation to custom-

---

408 U.S. 501, 526, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507, 525–526 (1972).

**10.** The text of the rule does not appear either in the record or in the parties' briefs, and it is unclear whether Senate rules actually forbid such use or whether that is simply left to the discretion of individual senators. It is undisputed, however, that appellant has been unable to find a senator who would reserve a room for use of her groups.

Senator Proxmire stopped reserving rooms for such uses in late 1975, not because he thought it improper but because he felt he "should be above criticism." App. (third unnumbered page). The Senator tells us that "[a]ll [appellant] needs to do if she wishes to reserve a room for her customers to hear a Senator speak is to ask the Senator to reserve one. I know of no rule which would prevent that." *Id.* (fourth unnumbered page). No one, of course, would see anything wrong with access by touring groups incidental to an audience of some sort with a senator when a room was not needed for Senate business. Certainly

our Capitol is a stellar attraction, and visitation with Senate members an opportunity few would pass up. We may not, however, proceed at this state of the litigation on this version of the facts. See text *supra* at note 3.

**11.** 18 U.S.C. § 201 (1976).

**12.** *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26, 36 (1975), quoting *Texas & P. Ry. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874, 877 (1916) (emphasis in original) (citations omitted).

**13.** See *Continental Management, Inc. v. United States*, 527 F.2d 613, 617, 208 Ct.Cl. 501 (1975).

**14.** See *Cort v. Ash, supra* note 12, 422 U.S. at 80, 95 S.Ct. at 2089, 45 L.Ed.2d at 37.

**15.** See *id.* at 82, 95 S.Ct. at 2090, 45 L.Ed.2d at 39.

**16.** *Id.* at 80, 95 S.Ct. at 2089, 45 L.Ed.2d at 37.

ers of one commercial enterprise, it could hardly have been intended to thereby protect the commercial interests of another. While we are sympathetic to the argument that taxpayers' money should not be spent on maintenance of publicly-owned property to enable private companies to turn a profit, a violation of the rule is not a predicate for a lawsuit.

The same considerations lead us inevitably to the conclusion that neither the statute nor the rule delimits duties on the Senator's part that can be enforced through a traditional tort cause of action. As a tour-business-person, appellant is not " 'a member of the class to be protected' "[17] by these directives. Nor were they "designed to prevent the sort of harm to the individual relying upon [them] which has in fact occurred."[18] Indeed, Senator Cannon's committee apparently decided that the practice complained of involves no breach of the rules. The judicial function is not implicated at all, for only in the Senate forum can observance of the rule be compelled.

### III

■ Perhaps appellant's strongest claim is unfair competition.[19] The major allega-

tion under that rubric is that Ms. Proxmire has utilized in Whirl-Around's business the prestige and contacts enjoyed by a senator's wife, and resultantly has enabled Whirl-Around to gain competitive advantages over appellant. We think, however, that this theory of action shares the fate of the others.

In a society encouraging aggressive economic competition, this court has recognized that the tort of unfair competition is a somewhat anomalous creature.[20] Its scope has therefore been limited to three categories: passing off one's goods as those of another, engaging in activities designed solely to destroy a rival and using methods themselves independently illegal.[21] The case at bar does not fall within the first classification, and the second is intercepted by appellant's complaint itself.[22] There appellant does not so much as hint that the challenged conduct has as its purpose simply an effort to demolish her business; rather, she concedes in effect that it was "undertaken 'with the legitimate purpose of reasonably forwarding personal interest and developing trade.' "[23] The substance of what is alleged is that Ms. Proxmire

17. *Marusa v. District of Columbia*, 157 U.S. App.D.C. 348, 354, 484 F.2d 828, 834 (1973), quoting *Whetzel v. Jess Fisher Management Co.*, 108 U.S.App.D.C. 385, 389, 282 F.2d 943, 947 (1960); accord, *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 202, 88 S.Ct. 379, 386, 19 L.Ed.2d 407, 415–416 (1967), citing Restatement (Second) of Torts § 286.

18. *Peigh v. Baltimore & O. R. Co.*, 92 U.S.App. D.C. 198, 200, 204 F.2d 391, 393 (1953); Prosser, Torts § 36, at 197 (4th ed. 1971), citing *De Haen v. Rockwood Sprinkler Co.*, 258 N.Y. 350, 179 N.E. 764 (1932).

19. At oral argument, appellant's counsel for the first time suggested the possibility that appellant might have claims under the antitrust laws or for tortious interference with contract. We have parsed the complaint once again, but have not found any allegations that might adequately support such theories. As to tortious interference, the averment relied upon is merely that an organization that appellant thought she had as a firm client informed her that it had decided to employ the services of Whirl-Around. Without at least an inference that appellees knew of an existing contract between

the organization and appellant and acted to induce a breach of that contract, tortious interference is not sufficiently raised. See *Meyer v. Washington Times Co.*, 64 App.D.C. 218, 222, 76 F.2d 988, 992, *cert. denied*, 295 U.S. 734, 55 S.Ct. 646, 79 L.Ed. 1682 (1935). As to the antitrust laws, the only theory at all relevant would be monopolization, but the element of conduct necessary could be supplied only by the allegation of unfair competition. The complaint, as we discuss in text, see text accompanying notes 19–24 *infra*, does not allege facts adequate to state a cause of action in that regard.

20. *Scanwell Laboratories, Inc. v. Thomas*, 172 U.S.App.D.C. 281, 289, 521 F.2d 941, 949 (1975), *cert. denied*, 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976).

21. *Id.*

22. *See, e. g.*, Complaint ¶¶ 1 & 6.

23. *Standard Oil Co. v. United States*, 221 U.S. 1, 58, 31 S.Ct. 502, 515, 55 L.Ed. 619, 644 (1911), quoted in *Scanwell Laboratories, Inc. v.*

wanted to make a bigger profit by capturing every potential customer, and that she must have realized that in doing so appellant would suffer grievously. That is not the same thing as acting with the motive of annihilating appellant's enterprise.

■ That leaves only the third category—unlawful competitive mechanisms—and the insuperable difficulty there is that simple use of one's status in society is not itself illegal. Appellant states that Whirl-Around secured entry to the vice-presidential mansion, the west lawn of the Capitol, State Department entertaining rooms and various rooms in the Senate office buildings. Because appellant could not match these arrangements, Whirl-Around could advertise "special tours" to "places normally inaccessible to other groups." [24] In like fashion, appellant says, Whirl-Around's popularity grew partly because it could offer the opportunity to meet wives of governmental officials and to see their private homes. The key to Whirl-Around's success thus assertedly was appellees' fame and ability to "open doors."

■ A hallmark of our way of life is the belief that personal gain should flow from individual ability and effort—not merely from perceived rank. The judge's function, however, is limited to redress of legally-cognizable wrongdoing, and financial success does not become unlawful simply because it is aided by prominence; nor could it be, without locking the famous out of the economy. Even with the most conscientious endeavor not to trade upon personal repute, many will still treat celebrities specially, and their spouses should not be exiled from the business world just because the marital relationship might lead others to grant unique opportunities. Nor does acceptance of those opportunities flaunt any known rule of law, though without the celebrity's well-earned stature they might never have been made available. Moreover, however reprehensible it might be through political influence to use public property for private gain, that evil cannot provide a basis for this private damage suit.

### IV

■ Appellant suggests that because she was formally without counsel until oral argument of this appeal,[25] we must construe her complaint with great liberality. We agree wholeheartedly that courts must always heed their responsibility to afford *pro se* litigants "every fair opportunity to present their case[s]." [26] We are mindful, too, as the Supreme Court has instructed, that no complaint may be dismissed for failure to state a claim unless, after patient scrutiny and a liberal reading in the plaintiff's favor,[27] "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [28]

■ Appellant's complaint has received at least that level of care, both in the District Court and here.[29] It was dismissed not because appellant appeared *pro se* but because none of the factual allegations or inferences possibly deducible therefrom made out a cause of action against either appellee.[30] Were there any plausible sug-

*Thomas, supra* note 20, 172 U.S.App.D.C. at 289, 521 F.2d at 949.

24. Complaint, Exhibit 3.

25. At the hearing on appellees' motion to dismiss, appellant stated that "I am representing myself. However, I have had legal assistance." Tr. 12. There is no reason to assume that an attorney actually helped appellant prepare her complaint but then decided not to appear formally in order to gain the tactical advantage of having the complaint tested only by the standard demanded of *pro se* pleadings.

26. *Mason v. BeLieu,* 177 U.S.App.D.C. 68, 70, 543 F.2d 215, 217, *cert. denied,* 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976).

27. See cases cited *supra* note 3.

28. *Conley v. Gibson, supra* note 3, 355 U.S. at 45 -46, 78 S.Ct. at 102, 2 L.Ed.2d at 84.

29. See, *e. g.,* Tr. 7 & 13.

30. Appellant argues that she was treated unfairly because, at the time of the hearing on the motion to dismiss she did not know the full implications of the phrase "dismissal *with prej-*

gestion that appellant could do so now with counsel, we would remand to the District Court to afford that opportunity. But with all facts material to appellant's complaint ostensibly before us, we see no occasion for extending the life of this litigation. The interest of those who are sued in having the matters resolved quickly, when justified, must not give way completely to our desire to protect those who sue without counsel. Appellant has no doubt suffered injury, but not injury actionable at law. The complaints registered in this litigation may be matters for the Senate, but certainly not for the courts. Agreeing, then, as we must, that no claim has been stated upon which relief could be granted, the judgment of the District Court is

*Affirmed.*

*udice.*" See text *supra* at note 1. Be that as it may, any error inhering in that circumstance is harmless since the District Court applied the proper standard to the motion to dismiss with prejudice, see notes 26–27 *supra*, and accompanying text and arrived at the correct result.