# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 23, 2009

Decided June 23, 2009
Unsealed July 9, 2009

No. 08-3056

IN RE: GRAND JURY SUBPOENAS

Appeal from the United States District Court
for the District of Columbia
(No. 1:07mc00319)

Before: GINSBURG and KAVANAUGH, *Circuit Judges*, and
WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

Concurring opinion filed by *Circuit Judge* KAVANAUGH.

GINSBURG, *Circuit Judge*: The Ethics Committee of the
United States House of Representatives opened an
investigation into whether a certain congressman had violated
House Rules by accepting private funding for a trip; the
congressman maintained the trip was primarily for the
purpose of legislative fact-finding. After the Committee had
closed the matter, the Government began an investigation into
certain statements the congressman made in his responses to
the Committee. Grand jury subpoenas were served upon the
law firm and upon the individual lawyers who represented the
congressman before the Ethics Committee. The congressman
moved to quash the subpoenas on the ground, among others,

that they called for testimony and documents protected by Article I, Section 6, the Speech or Debate Clause, of the Constitution of the United States, which says of senators and representatives that "for any Speech or Debate in either House, they shall not be questioned in any other Place." The district court denied the motion to quash, and the congressman sought review in this court. We hold the congressman's statements to the Ethics Committee are protected by the Speech or Debate Clause. Accordingly, the order of the district court denying the motion to quash is reversed, and the district court is directed to enter an order consistent with this opinion.

## I. Background

The congressman contacted the Ethics Committee in response to press reports about a trip he had taken. The Committee informed the congressman in writing that it was investigating allegations that the trip may have constituted an illegal gift because it was financed by a lobbyist or was substantially recreational in nature. The Committee explained that "if true, this course of conduct may implicate several laws and rules applicable to the conduct of House employees," such as the rule prohibiting the acceptance from a registered lobbyist of expenses for travel "in connection with his duties as an officeholder" and acceptance of travel expenses from any source for an event which is "substantially recreational in nature." House Rule 25, cl. 5(b). The Committee invited the congressman to respond to the allegations and recommended his response include details about the trip and about his understanding as to the sources of payment therefor.

The congressman retained a law firm to represent him before, and to prepare and submit a response to, the Ethics

Committee. His lawyers' first submission explained that the congressman had "participated in what was described to him, in advance, as a privately sponsored fact-finding trip"; they also recounted his understanding of who was sponsoring the trip and his recollection that he paid personally for his recreational activities. In response to a second letter from the Committee, his attorneys described the congressman's activities related to legislative fact-finding while on the trip. The Ethics Committee closed its inquiry with a brief public statement that "the trip did not comply with House rules and [the congressman] has agreed to resolve the matter by paying the cost of the trip to the United States Treasury."

Shortly thereafter, the grand jury began its investigation and a government lawyer told the congressman's attorneys that he and his colleagues wanted to interview the congressman about statements in the letters the congressman's attorneys had submitted to the Committee. When the congressman declined to be interviewed, the congressman's lawyers were served with grand jury subpoenas for testimony and documents related to their representation of the congressman before the Ethics Committee and their preparation of the submissions made on his behalf. The lawyers moved to quash on the grounds of attorney-client privilege and the work product doctrine. The congressman intervened, adopted his lawyers' arguments, and moved to quash on the additional ground that the documents and testimony sought were protected from discovery by the Speech or Debate Clause.

The district court denied the motions to quash. With respect to the Speech or Debate Clause, the court reasoned that in responding to the Ethics Committee's inquiry, the congressman was not acting in his legislative capacity but in his personal capacity as a witness to facts relevant to the

Committee's investigation. An adverse determination of the sort before us under the Speech or Debate Clause being immediately appealable under the collateral order doctrine, *see United States v. Rostenkowski*, 59 F.3d 1291, 1297 (D.C. Cir. 1995), the congressman filed a notice of appeal from that portion of the district court's order rejecting his invocation of the Speech or Debate Clause.

## II. Analysis

To reiterate, the Constitution says of senators and representatives that "for any Speech or Debate in either House, they shall not be questioned in any other Place." In keeping with the purpose of the privilege to "prevent intimidation by the executive and accountability before a possibly hostile judiciary," *United States v. Johnson*, 383 U.S. 169, 181 (1966), without unduly infringing "the rights of private individuals," *Gravel v. United States*, 408 U.S. 606, 624 n.15 (1972), the Supreme Court has interpreted the immunity as applying only to "legislative acts," including matters that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings," *id.* at 624-25. Legislative fact-finding is therefore a protected activity. *McSurely v. McClellan*, 553 F.2d 1277, 1286-87 (D.C. Cir. 1976). Drawing upon the reasoning of the Supreme Court in *Gravel*, which concerned "things done by [a] Senator's agent or assistant which would have been legislative acts, and therefore privileged, if performed by the Senator personally," 408 U.S. at 616, the district court held a congressman may "assert the Speech or Debate Clause to bar compelled disclosure of testimony or documents from his attorney about the congressman's legislative acts." The Government does not contest that ruling. The Government does argue, however, that statements the congressman made in response

to the Ethics Committee's inquiry into whether his trip constituted an unlawful gift are not legislative acts and are therefore outside the scope of the Clause.

This court has considered twice before whether a congressman's statements to a congressional ethics committee are protected by the Speech or Debate Clause.  In *Ray v. Proxmire*, 581 F.2d 998 (1978), the plaintiff sued a senator for making an allegedly libelous statement in a letter he submitted to the Senate Ethics Committee, which was investigating whether he had misused Senate rooms to benefit his wife's travel business.  The senator had allegedly arranged for the use of Senate rooms by his wife's clients as they toured Washington, D.C.   The court held the statements protected by the Speech or Debate Clause:

> In responding to a Senate inquiry into an exercise of his official powers, Senator Proxmire was engaged in a matter central to the jurisdiction of the Senate .... There is no indication that he disseminated his letter to anyone whose knowledge of its contents was not justified by legitimate legislative needs. Nor is there any suggestion that the statement objected to intimated anything not reasonably spurred by the subject of [the] inquiry.

*Id.* at 1000.

*United States v. Rose*, 28 F.3d 181 (1994), was a civil action in which the Government charged a congressman with knowingly filing false financial disclosure statements.  The complaint relied upon testimony Rose had given to the House Ethics Committee.  Although the defendant's obligation to disclose his financial information was based upon his status as

a congressman, the court held the Speech or Debate Clause inapplicable because the committee was not inquiring into the "exercise of [his] official powers." *Id.* at 189 (quoting *Ray*, 581 F.2d at 1000). The court explained:

> The testimony was not addressed to a pending bill or to any other legislative matter; it was, instead, the Congressman's defense of his handling of various personal financial transactions. In short, Congressman Rose was acting as a witness to facts relevant to a congressional investigation of his private conduct; he was not acting in a legislative capacity.

*Id.* at 188 (internal citation omitted). Senator Proxmire's letter, in contrast, was his "response to an allegation that [he] had misused Senate rooms, an allegation that directly touched the institution of the Senate and raised a possible violation of Senate Rules." *Id.* at 189.

In the present case, the Government argues *Rose* rather than *Ray* controls because the congressman was responding to an inquiry not into the exercise of his official powers but merely into his "receipt of a prohibited personal gift," a recreational vacation. But that begs the question whether the congressman was exercising his official power of legislative fact-finding, which was precisely the issue the Ethics Committee was trying to resolve.

The first letter the congressman received from the Committee had described its investigation as looking into the receipt of an unlawful gift — which, taken alone, might well have signaled an inquiry into a wholly personal transaction similar to that in *Rose*. But the nature of the inquiry was

clarified when the congressman claimed the trip for which he had received private sponsorship was for the purpose of legislative fact-finding. The Committee's inquiry thereafter was directed to whether the trip was an exercise of the congressman's official powers or an abuse of those powers, i.e. a privately sponsored vacation.

Just as Senator Proxmire's "allegedly defamatory statement" about a local travel business, *Ray*, 581 F.2d at 1000, was protected by the Speech or Debate Clause because it was "reasonably spurred by the subject of [the] inquiry" into whether he had abused his office to help his wife's travel business, the congressman's statements in this case are protected because they were directly spurred by the inquiry into whether he had abused his office to obtain a vacation. The statements at issue in *Rose*, by contrast, concerned his "personal loans" and "personal financial transactions," 28 F.3d at 188; there was no connection between those statements and any act done or claimed to have been done in his legislative capacity.

In sum, this case is controlled by *Ray* rather than by *Rose*, the congressman's testimony is covered by the Speech or Debate Clause, and he may "not be questioned in any other Place" concerning it. The order of the district court denying the congressman's motion to quash the subpoenas is, accordingly,

*Reversed.*

KAVANAUGH, *Circuit Judge*, concurring: I join the opinion of the Court. I add this concurring opinion to express my concern about the confusion that has resulted from our decisions in *Ray v. Proxmire*, 581 F.2d 998 (D.C. Cir. 1978), and *United States v. Rose*, 28 F.3d 181 (D.C. Cir. 1994). The disarray has prompted all of the competing parties in this case — the Executive Branch, the House of Representatives, and an individual Member of Congress — to suggest that the en banc Court reconsider *Ray*, *Rose*, or both. I agree that the full Court should do so at an appropriate time.

The Constitution's Speech or Debate Clause provides an immunity and privilege that protect communications by Members of Congress in official congressional proceedings. *See* U.S. CONST. art. I, § 6, cl. 1 (protecting "Speech or Debate in either House"). In *Ray*, however, the Court watered down the constitutional text and decided that a Member's speech in a congressional disciplinary proceeding warrants protection only if the legislative committee is inquiring into a Member's "exercise of his official powers." 581 F.2d at 1000. Under that approach, the Speech or Debate Clause does not cover a Member's speech in a congressional disciplinary proceeding if the committee is investigating his or her "private conduct." *Rose*, 28 F.3d at 188.

In my judgment, the *Ray/Rose* test does not accord with the text of the Speech or Debate Clause and the Supreme Court's precedents. A Member's statement to a congressional ethics committee is speech in an official congressional proceeding and thus falls within the protection of the Clause. *See Gravel v. United States*, 408 U.S. 606, 625 (1972) ("The heart of the Clause is speech or debate in either House."). The *Ray/Rose* test not only distorts the constitutional text, but also creates a host of practical and jurisprudential difficulties — perhaps best exemplified by the fact that *Ray* and *Rose* reached different results on very similar facts. The en banc

2

Court should replace the *Ray/Rose* test with a rule that adheres to the text of the Speech or Debate Clause.

I

A

Article I, Section 6 of the Constitution provides that "Senators and Representatives . . . shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; *and for any Speech or Debate in either House, they shall not be questioned in any other Place*." U.S. CONST. art. I, § 6, cl. 1 (emphasis added). Drawing on similar language from the 1689 English Bill of Rights and several colonial constitutions, the Constitutional Convention approved the Speech or Debate Clause with no apparent disagreement. Nor was the Clause the subject of controversy during the ratification period. *See* JOSH CHAFETZ, DEMOCRACY'S PRIVILEGED FEW 74, 87-88 (2007); JOSEPH STORY, 1 COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 863 (1833). As the Framers drafted it, the Clause helps maintain the separation of powers among the three Branches. *See Kilbourn v. Thompson*, 103 U.S. 168, 201-02 (1880); AKHIL REED AMAR, AMERICA'S CONSTITUTION: A BIOGRAPHY 101-02 (2005). The Supreme Court has explained that the Clause assures Members of Congress "wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch" or from private citizen suits. *Gravel v. United States*, 408 U.S. 606, 616 (1972).

Article I, Section 5 of the Constitution, meanwhile, provides that "Each House may determine the Rules of its

Proceedings, *punish its Members for disorderly Behaviour*, and, with the Concurrence of two thirds, expel a Member." U.S. CONST. art. I, § 5, cl. 2 (emphasis added). This Clause gives both Houses broad official powers to hold investigations "for violations of statutory law, including crimes; for violations of internal congressional rules; or for . . . even purely private conduct by a Member that, in the House's opinion, reflects badly on it as an institution." CHAFETZ, DEMOCRACY'S PRIVILEGED FEW, at 210 (citing Congressional Research Service, *Expulsion, Censure, Reprimand, and Fine: Legislative Discipline in the House of Representatives*, at 3 (2002)) (internal quotation marks omitted). The Clause thus grants expansive authority for each House to discipline and sanction its Members for improper behavior.

This case involves the intersection of those two clauses of the Constitution. Specifically, we address whether a Member's communications in an official congressional disciplinary proceeding constitute "Speech . . . in either House." U.S. CONST. art. I, § 6, cl. 1.

In my view, the answer is straightforward. Regardless whether the Member's underlying "disorderly Behaviour" is considered official or personal, the House or Senate's disciplinary proceedings are official "Proceedings" of the House or Senate. And a Member's speech in such an official congressional proceeding constitutes "Speech . . . in either House."[1]

---

[1] I take it as a given here that "Speech" for purposes of the Speech or Debate Clause — just as for purposes of the First Amendment — covers both oral and written communications, and that the Clause applies to committees in either House and not only to the chambers in either House. *See Kilbourn*, 103 U.S. at 204.

Therefore, under the text of the Constitution, the speech at issue in both *Ray v. Proxmire*, 581 F.2d 998 (D.C. Cir. 1978), and *United States v. Rose*, 28 F.3d 181 (D.C. Cir. 1994), should have qualified as protected speech. Both cases involved an official congressional proceeding: an investigation by the Senate Select Committee on Standards and Conduct in *Ray*; and an inquiry by the House Committee on Standards of Official Conduct in *Rose*. Both cases involved a Member's speech in the official proceeding: Senator Proxmire's written communications in *Ray*; and Congressman Rose's oral testimony in *Rose*. The analysis need have gone no further. Speech by a Member in an official House or Senate disciplinary proceeding qualifies as "Speech . . . in either House" and thus is protected by the Speech or Debate Clause.

The constitutional text is similarly easy to apply here. This case concerns written responses submitted by a Member in an official disciplinary investigation conducted by the House Committee on Standards of Official Conduct. The Member's communications constitute "Speech . . . in either House" and thus fall within the "heart of the Clause." *Gravel*, 408 U.S. at 625.

This result follows not just from the constitutional text itself but also from principles articulated by the Supreme Court in its Speech or Debate Clause cases. To be sure, the Court has not addressed the precise issue raised in this case. But it has stated that the Speech or Debate Clause extends both to (i) "Speech or Debate in either House" — the "heart of the Clause," as the Court has said, and to (ii) "matters" that are "an integral part of the *deliberative and communicative processes by which Members participate in committee and House proceedings* with respect to the consideration and passage or rejection of proposed legislation or *with respect to*

5

*other matters which the Constitution places within the jurisdiction of either House.*"  *Id.* at 625 (emphases added).  A Member's speech in an official House disciplinary proceeding qualifies under either prong of the *Gravel* test:  Such a Member not only engages in "Speech or Debate in either House" but also, by definition, takes part in communicative processes with respect to matters which the Constitution places within the jurisdiction of the House.[2]

B

The *Ray* Court went off the rails, in my judgment, by focusing on the *subject matter* of the underlying disciplinary proceeding — and by applying a test that grants protection only when the investigation concerns a Member's official conduct, as opposed to his or her personal conduct.  *See Ray*, 581 F.2d at 1000; *Rose*, 28 F.3d at 188-89.  The Court accordingly deemed Senator Proxmire's letter privileged

---

[2] The Supreme Court has arguably extended the protections of the Speech or Debate Clause beyond what its plain text otherwise might suggest.  *See Gravel*, 408 U.S. at 618, 625; *Kilbourn*, 103 U.S. at 204.  In particular, the Court has held that the Clause covers not just speech or debate but certain conduct as well — "legislative acts," in the Court's words.  *See United States v. Brewster*, 408 U.S. 501, 512 (1972) ("A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it."); *Gravel*, 408 U.S. at 625 ("The heart of the Clause is speech or debate in either House.  *Insofar as the Clause is construed to reach other matters*, they must be an integral part of the deliberative and communicative processes by which Members participate . . . .") (emphasis added).  But the Court has not interpreted the Clause to provide *less* protection than the text establishes.  In other words, the Court has never suggested that actual speech in an official congressional proceeding could somehow fall outside the protections of the Clause.  In my judgment, however, the *Ray*/*Rose* test incorrectly does just that.

because the disciplinary proceeding purportedly arose out of his official conduct — making Senate rooms available for use by his wife's business. Later in *Rose*, however, the Court found Congressman Rose's testimony not privileged because the proceeding purportedly arose out of his personal conduct — failing to properly report certain liabilities on his official financial disclosure report.

The Court's fine slicing of a Member's speech in those two cases does not square with the text of the Constitution, which gives absolute protection to "any Speech" by a Member in an official congressional proceeding.

Moreover, the *Ray*/*Rose* approach creates great uncertainty. After all, it can be quite difficult to determine whether an allegation of wrongdoing involves official or personal acts because the categories often overlap — for example, when a Member is alleged to have abused his or her official position for personal gain. Indeed, the results in *Ray* and *Rose* are in great tension with one another; the two cases reached different results on very similar facts.

The uncertainty caused by the *Ray*/*Rose* test is especially problematic in this context because the scope of a privilege must be clear and predictable for the privilege to serve its purpose. As the Supreme Court has said, "An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981); *see also Swidler & Berlin v. United States*, 524 U.S. 399, 409 (1998); *Jaffee v. Redmond*, 518 U.S. 1, 18 (1996). Professor Tribe has persuasively explained this point with respect to the Speech or Debate Clause:

Like any privilege, the one that the Speech or Debate Clause grants to members of Congress would be virtually worthless if courts judging its applicability had to scrutinize very closely the acts ostensibly shielded, especially if those courts then had to balance the considerations for and against extending privileged status. The reason is that any privilege whose criteria of applicability are fuzzy or multifactored or both offers too little predictability to its intended recipients for it to generate the confidence and repose that the privilege will have been adopted to provide, and sacrifices much of the privacy and security that the privilege was supposed to offer in the very process of determining its applicability in the particular case.

LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 5-20, at 1017 (3d ed. 2000).

The *Ray*/*Rose* test has caused all three Branches great difficulty. One can hardly fault the esteemed District Judge or the Legislative and Executive Branch parties in this case for their efforts to make sense of our conflicting precedents. Nor can one blame the parties for asking us to resolve the confusion by overruling at least one of the two cases.

Instead of continuing down the erratic path marked by the *Ray*/*Rose* test, the en banc Court should resolve this issue by looking to the text of the Speech or Debate Clause. As I read the Constitution and the Supreme Court's case law, courts must protect, without qualification, a Member's speech in an official congressional disciplinary proceeding.

8

II

To be sure, the above analysis of this Speech or Debate Clause issue raises some important questions.

As a policy matter, the Executive Branch suggests that adhering to the actual text of the Clause in this context may thwart some criminal investigations and prosecutions — in particular, cases involving alleged false statements by Members to congressional ethics committees. That result is unwelcome; on the other hand, all privileges have the effect of impeding criminal investigations and the search for truth. *See Swidler & Berlin v. United States*, 524 U.S. 399, 406 (1998)*.* And it's not as if Members would get a free pass to lie to congressional ethics committees. False statements can constitute a basis for expulsion from Congress or the lesser sanction of censure or reprimand (which, in turn, can augur a defeat at the polls). In all events, any such policy discomfort cannot dictate our resolution of this constitutional issue. *Cf. Texas v. Johnson*, 491 U.S. 397, 420 (1989) (Kennedy, J., concurring) ("The hard fact is that sometimes we must make decisions we do not like.").

As a jurisprudential matter, the Executive Branch suggests that this kind of analysis may place too much emphasis on the actual words of the Speech or Debate Clause; it would prefer to balance the protections of the Clause against the interest in preventing and punishing corruption and false statements. But especially in separation of powers cases — from *Marbury v. Madison* to the present — the Supreme Court has repeatedly stressed that the precise words of the Constitution control and that courts must not relax the enduring structural protections contained in the document's text. *See Clinton v. New York*, 524 U.S. 417, 446 (1998) ("Congress cannot alter the procedures set out in Article I, §

7, without amending the Constitution."); *INS v. Chadha*, 462 U.S. 919, 945 (1983) ("policy arguments supporting even useful 'political inventions' are subject to the demands of the Constitution which defines powers and . . . sets out just how those powers are to be exercised"); *Buckley v. Valeo*, 424 U.S. 1, 134 (1976) (practical "fears, however rational, do not by themselves warrant a distortion of the Framers' work"); *Powell v. McCormack*, 395 U.S. 486, 550 (1969) ("in judging the qualifications of its members Congress is limited to the standing qualifications prescribed in the Constitution"); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173-77 (1803) (carefully analyzing precise text of Article III of the Constitution in concluding that § 13 of Judiciary Act of 1789 is unconstitutional and stating that "all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation").

In short, the Framers drafted and ratified the Speech or Debate Clause to serve as a robust shield against intimidation of legislators by the Executive or from private citizen suits. *See United States v. Johnson*, 383 U.S. 169, 181 (1966). In some respects, the Speech or Debate Clause is a counterpart to the executive privileges that constitute an essential part of the President's "executive Power" under Article II and that protect the President and the Executive Branch from similar intimidation by the Legislature. In the context of a specific case, the need for evidence usually will seem weightier than those long-term structural safeguards. But courts must respect the constitutional balance between the Legislative and Executive Branches regardless of the perceived needs of the moment.

10

\* \* \*

In my judgment, the *Ray*/*Rose* test does not accord with the text of the Speech or Debate Clause or with the principles articulated by the Supreme Court in its decisions. And the test has created considerable confusion — leading the Executive Branch, the House of Representatives, and an individual Member of Congress to request that it be overruled. The test is both unwise in principle and unworkable in practice. Because of the importance of the Speech or Debate Clause to the constitutional separation of powers and to the operations of the Government, I respectfully suggest that, at an appropriate time, the en banc Court reconsider the *Ray*/*Rose* test and bring this aspect of our Speech or Debate Clause jurisprudence in line with the constitutional text. As a three-judge Court, we of course do not have that authority, and I therefore join the opinion of the Court.