# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 22, 2019          Decided February 28, 2020

No. 18-7185

K&D LLC, TRADING AS CORK,
APPELLANT

v.

TRUMP OLD POST OFFICE LLC AND DONALD J. TRUMP,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00731)

*Alan B. Morrison* argued the cause for appellant. With him on the briefs were *Mark S. Zaid* and *Bradley P. Moss*.

*Michael E. Kenneally* argued the cause for appellees. With him on the brief were *Eric W. Sitarchuk*, *Fred F. Fielding*, and *Rebecca Woods*. *Allyson N. Ho* entered an appearance.

Before: GARLAND and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by GRIFFITH, *Circuit Judge*.

2

GRIFFITH, *Circuit Judge*: Cork Wine Bar, a restaurant on the edge of the District of Columbia's U Street corridor, competes with President Donald Trump's eponymous Pennsylvania Avenue hotel. Cork brought suit in the Superior Court of the District of Columbia alleging violations of the District's common law of unfair competition. President Trump removed the suit to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The district court denied Cork's motion to remand the case, then dismissed its complaint for failure to state a claim. We affirm.

I

At the motion-to-dismiss stage, "we accept as true all of the complaint's factual allegations." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018). K&D, LLC, owns Cork Wine Bar. The Trump International Hotel is a business held in trust for the sole benefit of President Trump. Trump Old Post Office, LLC, operates the Hotel and holds the lease to the historic Pennsylvania Avenue structure. The Hotel, which opened in September 2016, features event spaces, a restaurant, and a lounge, and competes with Cork to host private events for international delegations and domestic public-interest groups.

Cork noticed that the competitive balance shifted toward the Hotel after the 2016 election, when the Hotel began to attract more of the lobbyists, advocacy groups, and diplomats that Cork had relied on to fill its event calendar. Cork alleges that these customers chose the Hotel because of a "perception" that patronizing the Hotel "would be to their advantage in their dealings with" the Trump Administration. Compl. ¶ 18, J.A. 28. President Trump and his associates have encouraged and advanced this perception by, among other things, using the President's surname as the Hotel's logo and promoting the

Hotel during press conferences and meetings with government officials. As a result, "foreign dignitaries have . . . flocked to the Hotel," *id.* ¶ 21, J.A. 29, including the Ambassador of Azerbaijan, whom Cork hosted prior to the election, *id.* ¶¶ 27-28, J.A. 31.

On March 9, 2017, Cork filed suit in the District of Columbia Superior Court against President Trump and the Hotel. Cork raised a claim of unfair competition under District common law for "the unfair advantage that the [Hotel] . . . has gained from Defendant Donald J. Trump being the President of the United States," *id.* ¶ 2, J.A. 25, and sought declaratory and injunctive relief. Cork did not raise any claim under the Constitution or laws of the United States.

Citing the federal officer removal statute, President Trump filed a timely notice of removal in federal court. *See* 28 U.S.C. § 1442(a)(1). Cork promptly moved to remand the case, but the district court denied that motion in a minute order. Once in federal court, President Trump and the Hotel moved to dismiss Cork's complaint for failure to state a claim.

The district court granted their motion to dismiss, concluding that Cork's allegations of unfair advantage caused by the Hotel's association with President Trump did not amount to a cognizable unfair-competition claim under District law. Neither the President nor his Hotel had interfered with access to Cork's business, the court held. Instead, Cork's complaint boiled down to an assertion that businesses with famous proprietors cannot compete fairly—a proposition alien to unfair-competition law. Cork filed a timely appeal.

4

II

Cork first argues that the case was improperly removed from the District of Columbia court. We must resolve this jurisdictional issue before turning to the merits.

If removal was proper under the federal officer removal statute, the federal court had "jurisdiction over all the claims and parties in the case." *District of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985). That statute allows "any officer . . . of the United States" to remove to federal court a state suit that is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

We apply a two-step test in officer-removal cases. First, the officer must "raise a colorable federal defense." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). Second, the officer must show that the suit is one "for or relating to any act under color of [his] office." 28 U.S.C. § 1442(a)(1). We must construe the statute liberally in favor of removal, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007), and "we credit the [officer's] theory of the case for purposes of both elements of" the removal inquiry, *Acker*, 527 U.S. at 432.

A

Removal under section 1442(a) constitutes an exception to the well-pleaded-complaint rule. "[F]ederal jurisdiction generally exists only when a federal question is presented on the face of the *plaintiff's* properly pleaded complaint." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (internal quotation marks omitted). But under section 1442(a), a suit may be removed "despite the nonfederal cast of the complaint" as long as the defendant presents a "colorable federal defense." *Acker*, 527 U.S. at 431. The federal defense need only be "colorable," not "clearly

sustainable." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). We do not "require the officer virtually to win his case before he can have it removed." *Acker*, 527 U.S. at 431 (internal quotation marks omitted).

President Trump raised two federal defenses in his notice of removal. First, he argued that the District may not impose legal conditions on the lawful performance of his presidential duties. J.A. 59. Second, he claimed absolute presidential immunity from personal liability. Because we find the first defense colorable, we need not address the President's alternative argument based on presidential immunity.

The Supremacy Clause restricts the power of state and local governments to regulate federal offices and officeholders. *See, e.g.*, *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819). In *Johnson v. Maryland*, for instance, the Supreme Court held unconstitutional a licensing regime that barred federal postal workers from operating vehicles until they passed a state exam. 254 U.S. 51, 57 (1920). Although a federal officer "does not secure a general immunity from state law," a state cannot "control [the officer's] conduct" when he or she is "acting under and in pursuance of [federal] laws." *Id.* at 56-57. Thus, Maryland could not impose a restriction beyond "those that the [federal] Government ha[d] pronounced sufficient." *Id.* at 57.

This principle is not boundless. In *Acker*, several federal judges refused to comply with a county ordinance that imposed a "license or privilege tax" on any occupation not already regulated by a licensing regime. 527 U.S. at 428. Citing *Johnson*, the judges argued that the ordinance made it "unlawful" for them "to engage in" their federal office without paying. *Id.* at 440. But the Court disagreed, distinguishing the

"regulatory" law in *Johnson*, which is forbidden, from the mere "revenue-raising" provision in *Acker*, which is not. *Id.*

Claiming his defense relies upon *Johnson*, President Trump contends that Cork's version of what District law requires works to regulate the "holding [of] federal office," Trump Br. 14, because it would "forbid[] federal officials from owning interests in a D.C. business," *id.* at 16. Any officer with a stake in such a business would face civil liability because of his official status, which amounts to conditioning the lawful exercise of federal power on compliance with "local legal requirements." J.A. 59.

We think the President's theory is colorable. *Acker* tells us that the "practical impact" of the relevant restriction "is critical" in this context. 527 U.S. at 440. And a state court's decision to embrace Cork's argument might impede federal officers. The Supremacy Clause might bar a state-law tort claim that applies only to federal officers or holds that ordinarily acceptable behavior—here, running a business—triggers liability when undertaken by a federal officer.

To be clear, we take no position on the merits of President Trump's defense. We need only conclude that, under his "theory of the case," the defense is "colorable." *Id.* at 431-32; *see also id.* at 431 (holding that, "although we ultimately reject [the judges' theory,] it . . . presents a colorable federal defense").

B

At the second step of our removal inquiry, President Trump must show that Cork's suit was "for or relating to any act under color of [his] office." 28 U.S.C. § 1442(a)(1). To satisfy this requirement, "the officer must show a nexus, a causal connection between the charged conduct and asserted

official authority." *Acker*, 527 U.S. at 431 (internal quotation marks omitted). Put differently, "[t]he circumstances that gave rise to the . . . liability" must "encompass" the defendant's conduct in office. *Id.* at 433.[1]

President Trump characterizes Cork's suit as an action "for or relating to" the act of simply holding office. Trump Br. 12. He argues that his position as President is "a necessary condition for Cork's theory of liability," and that his "assumption of office is what caused the alleged unfair competition to begin." *Id.* at 30-31.

We agree. The fact that Donald Trump is President is indispensable to Cork's claim. Cork's complaint expressly targets "the unfair advantage that the Trump International Hotel . . . has gained from Defendant Donald J. Trump *being the President* of the United States." Compl. ¶ 2, J.A. 25 (emphasis added). Indeed, Cork conceded at oral argument that its unfair-competition claim is "based entirely" on President Trump's status as a federal officeholder. Oral Arg. Tr. 19:22-25. As a result, Cork argues, the ongoing unfair

---

[1] Congress added the words "or relating to" to the statue in 2011. *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545, 545. Our sister circuits read this language as relaxing the nexus requirement, such that "a connection or association between the act in question and the federal office" now suffices. *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015) (internal quotation marks omitted); *see also Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017). We need not decide the effect of the amended language in this case, because Cork's suit qualifies even under the pre-amendment *Acker* standard.

competition can be remedied by President Trump's immediate resignation from office. Compl. ¶ 42, J.A. 33.

A suit that hinges on President Trump's status as President of the United States has a causal connection to his "asserted official authority." *Acker*, 527 U.S. at 431 (internal quotation marks omitted). If Cork is right about the District's common law, the President has a legal duty to either resign from office or divest from the Hotel. As explained immediately below, an officer's failure to comply with a legal duty imposed by his official status is an "act under color of [his] office," and a suit seeking to impose liability "for" that failure surely qualifies for removal under section 1442(a)(1).

Cork argues that the removal statute applies only when a plaintiff challenges a specific *official* act, and that its suit does no such thing. This argument evokes the dissenting opinion in *Acker*. There, Justice Scalia construed the target of the state suit as the judges' refusal to pay the occupation tax. *Id.* at 445 (Scalia, J., dissenting). Because that act of resistance was neither "required by" the judges' "official duties" nor "taken in the course of performing" those duties, he concluded that the suit was ineligible for removal. *Id.*

But the *Acker* majority rejected that narrow approach. *Id.* at 432 (majority opinion). Rather than frame the targeted "act" as the judges' unofficial resistance, the Court looked to the "circumstances that gave rise to the tax liability," which included the judges' continued exercise of official authority in Jefferson County, Alabama. *Id.* at 433. Similarly, President Trump's continued exercise of official authority is a prerequisite to liability under Cork's tort theory.

Because President Trump has raised a colorable federal defense and demonstrated that Cork's suit falls within the scope of section 1442(a)(1), we conclude that this case was

properly removed, and the district court possessed subject-matter jurisdiction.

## III

We turn now to the merits. The district court dismissed Cork's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Our review is de novo. *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 922 F.3d 480, 486 (D.C. Cir. 2019).

When "considering common law claims, federal courts must apply existing law—we have no power to alter or expand the scope of D.C. tort law." *Pitt v. District of Columbia*, 491 F.3d 494, 507 (D.C. Cir. 2007). In other words, "[w]e must apply the law of the forum as we infer it presently to be, not as it might come to be." *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 424 (D.C. Cir. 1988) (quoting *Dayton v. Peck, Stow & Wilcox Co.*, 739 F.2d 690, 694-95 (1st Cir. 1984)).

The District's case law does not define unfair competition "in terms of specific elements," but rather by way of example, describing "various acts that would constitute the tort if they resulted in damage." *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001). We have previously identified three species of unfair competition under District law: "passing off one's goods as those of another, engaging in activities designed solely to destroy a rival[,] and using methods themselves independently illegal." *Ray v. Proxmire*, 581 F.2d 998, 1002 (D.C. Cir. 1978). Later, in its most recent statement on the subject, the District of Columbia Court of Appeals listed as forms of unfair competition "defamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inducing employees to sabotage, [and] false advertising or

deceptive packaging." *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982) (citing WILLIAM PROSSER, HANDBOOK OF THE LAW OF TORTS 956-57 (4th ed. 1971)).

Cork makes no meaningful attempt to square its unfair-competition claim with District law. The gravamen of Cork's complaint is that so long as the President retains a stake in the Hotel, Cork cannot fairly compete, because of the "perception" that Hotel patrons will receive favorable treatment from the Trump Administration. Although Cork suggests in passing that President Trump and the Hotel are "impair[ing]" competition and "interfer[ing] with access" to its business, Cork Br. 44-45, its claim bears little resemblance to the examples listed in *Ray* and *B & W Management*, and Cork cites no case showing that the allegations here fall into those categories of unfair competition.

President Trump argues that we have expressly rejected Cork's theory of unfair competition. In *Ray v. Proxmire*, the plaintiff, a tour operator, alleged that Senator William Proxmire's wife had leveraged "the prestige and contacts enjoyed by a senator's wife" to promote her rival tour company. 581 F.2d at 1002. The Senator's wife "secured entry to the vice-presidential mansion, the west lawn of the Capitol, State Department entertaining rooms and . . . Senate office buildings," and "offer[ed] the opportunity to meet wives of governmental officials and to see their private homes." *Id.* at 1003. We rejected the plaintiff's unfair-competition claim, explaining that "financial success does not become unlawful simply because it is aided by prominence." *Id.*

Given Cork's failure to cite any contrary precedent, we see no reason to conclude that District common law recognizes

anything like Cork's unfair-competition claim.[2] During oral argument, we asked Cork to cite any case—from any jurisdiction—in which a plaintiff successfully advanced a similar theory. Cork conceded that no such case exists. Oral Arg. Tr. 3:23-4:2, 10:8-22, 11:9-11, 12:3-4 ("There are no other cases because, your Honor, I believe what the Defendant did here is unique."); *see also* Reply Br. 18 ("[T]here are no decisions of any court[] . . . in which the facts are remotely similar to this case.").

Cork's case cannot survive that concession. Instead of citing case law, Cork appeals to the ongoing evolution of common-law claims like unfair competition and cites generic passages from the Second and Third Restatements of Torts. Cork Br. 42-44. Cork's allegations may one day constitute actionable unfair competition in the District. But we must "take the law of the appropriate jurisdiction as we find it," *Tidler*, 851 F.2d at 424, and Cork offers no indication that the common law of the District—or, indeed, of any jurisdiction—has evolved to encompass its theory of unfair competition. We therefore affirm the district court's dismissal of Cork's complaint.

In fairness, Cork did not plan on having its common-law claim adjudicated in a court incapable of adapting the common law to fit these allegations. Now that the suit has been properly removed to federal court, Cork urges us to certify the core question of District law—*i.e.*, the validity of its unfair-

---

[2] Cork argues that a provision in the lease agreement between the General Services Administration and the Hotel evinces a "common understanding" that "elected officials [may not] benefit from their financial interests in leases of government property." Cork Br. 47; *see also* Compl. ¶ 10, J.A. 26 (describing section 37.19 of the lease). But Cork articulates no link between the lease provision and the District's common law of unfair competition, and we see none.

competition theory—to the District of Columbia Court of Appeals.

We decline that request. The decision to certify is a discretionary one, and "[t]he most important consideration guiding the exercise of [our] discretion" is whether we are "genuinely uncertain" about the correct answer under existing state law. *Id.* at 426. When the law "provide[s] a discernible path," we follow it. *Id.* Here, *Ray* and *B & W Management* provide that path by demonstrating that District law does not recognize Cork's claim, and Cork fails to identify any case suggesting an alternative route. Moreover, Cork did not argue that this "case is one of extreme public importance," a traditional element of our certification analysis. *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 24 (D.C. Cir. 2014).

IV

The judgment of the district court is affirmed.

*So ordered.*